IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

MUSTAFA-EL K.A. AJALA,
formerly known as DENNIS E. JONES-EL,

                                                   OPINION AND ORDER

                   Plaintiff,

                                                   13-cv-102-bbc

   v.

CRAIG TOM and MATTHEW SCULLION,

                  Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

     Pro se prisoner Mustafa-El K.A. Ajala, formerly known as Dennis Jones-El, alleges that defendants Craig Tom and Matthew Scullion used excessive force against him by handcuffing him too tightly during a prison transfer, in violation of the Eighth Amendment. Defendants have filed a motion for summary judgment on the ground that plaintiff failed to exhaust his available administrative remedies as required by the Prison Litigation Reform Act. 42 U.S.C. § 1997e(a). In addition, plaintiff has filed a motion to reconsider the decision to allow defendants to file a late reply brief, but I am denying that motion because I see no unfair prejudice to plaintiff in accepting defendants' brief.

     With respect to defendants' motion, it is undisputed that plaintiff filed two grievances related to the issues in this case, but grievance examiners rejected both of them. The first grievance was rejected for violating Wis. Admin. Code § DOC 310.09(2), which prohibits

prisoners from filing more than two grievance in a calendar week. The second grievance was rejected under Wis. Admin. Code § DOC 310.11(5)(d) as untimely. Plaintiff's primary argument is that the grievance examiners should have accepted his first grievance under the "health and safety" exception to § DOC 310.09(2), but I must defer to the examiner's conclusion that plaintiff did not qualify for the exception. Plaintiff's remaining arguments are undeveloped and unpersuasive. Accordingly, I will grant defendants' motion for summary judgment.

Several months ago plaintiff filed his own motion for summary judgment, which the court stayed pending resolution of the exhaustion issue. Because I am resolving that issue in favor of defendants, this moots plaintiff's summary judgment motion.

From the evidence submitted by the parties, I find that the following facts are undisputed.

## UNDISPUTED FACTS

Plaintiff Mustafa-El K.A. Ajala is a prisoner at the Wisconsin Secure Program Facility in Boscobel, Wisconsin. During the calendar week beginning on February 18, 2007 and ending on February 24, 2007, plaintiff filed three inmate complaints. The Institution Complaint Examiner's Office received two complaints on February 22, 2007. In the first, plaintiff alleged harassment by correctional officers. In the second, plaintiff alleged that the institution complaint examiner was obstructing his right to file complaints. On February 23, 2007, the Institution Complaint Examiner's Office received plaintiff's third inmate

complaint in which plaintiff alleged that defendants engaged in excessive force during his transfer to the facility:

> On [February 10, 2007] I had hand-cuffs placed on me so tight (for a[n] hour drive, from GBCI to WSPF) that it left bruises on my wrists and my hands swollen. The nurse saw this with her own eyes, documented it and gave me pain medication which I'm still taking for this. [Co.] Scullion placed the cuffs on, under supervision of Lt. Tom. I asked repeatedly that the handcuffs be loosened just a little bit (even before the van took off), but was told by Lt. Tom to deal with it. This was seriously painful throughout the whole trip, numbing pain.

In a decision dated February 23, 2007, the examiner rejected the complaint on the ground that plaintiff had filed more than two complaints in one calendar week, in violation of Wis. Admin. Code § DOC 310.09(2). The examiner wrote: "Inmates may not file more than two complaints per calendar week, with few exceptions, and this complaint does not meet either exception [DOC 310.09(2)]."

Plaintiff refiled his rejected complaint on Saturday, February 24, 2007. On the attached information request, plaintiff wrote: "[I]t deals with health [and] safety, [and] the ICRS may allow more than [two] complaints a week." On February 26, 2007, the Institute Complaint Examiner's Office received the re-filed complaint and an examiner responded to the information request. The response stated: "Complaint was accepted today." On February 27, 2007, the examiner rejected the re-filed complaint. The examiner wrote: "Pursuant to DOC 310.11(5)(d), the inmate submitted the complaint beyond 14 calendar days from the date of the occurrence giving rise to the complaint and provides no good cause for the [examiner] to extend the time lines. The incident Inmate Jones is referring to occurred on 2/10/14."

On February 28, 2007, the reviewing authority received plaintiff's request for Review of Rejected Complaint. Plaintiff wrote the following:

> The complaint clearly shows the original date of receipt within the 14 days. It was returned because it was the 3rd complaint that week, despite my request that it be accepted anyway, as it (this complaint) related to my health and safety.  I  resubmitted it, with the request slip explaining all this, and asked that for these reasons it should be accepted beyond the 14 days.

The reviewing authority affirmed the examiner's rejection on March 2, 2007.

In April 2007, plaintiff helped inmate Raynard Jackson prepare questions for Department of Corrections employee Ellen Ray.  In particular, they asked, "For the purpose of exhaustion, is a 'rejected complaint' that's reviewed to the warden considered proper exhaustion under [the Prison Litigation Reform Act] for the purpose of filing a lawsuit?"  The request then listed six specific complaints and asked "all these are 'rejected complaints' that I appealed to the warden so are these exhausted complaints under [the Prison Litigation Reform Act]?"  In a response dated April 3, 2007, Ray said, "Yes, you did exhaust on the above complaints by appealing the rejection."

In a letter dated October 22, 2007, a prisoner named Raynard Jackson inquired sent a letter to Ray in which he wrote the following:

> Today at my cell-front you verified that a "[r]ejected [complaint]" that's filed to the warden is a fully exhausted complaint[, and] that a "dismissed complaint" filed to Madison is a fully exhausted complaint, . . . so to save you some time regarding you reviewing "my inmate complaint history" just let me know are the following complaints fully exhausted under the [Prison Litigation Reform Act] for the sole purpose of filing and pursuing civil litigation?

Two lists of complaint numbers appear after the inquiry, each with a space left for Ray's response.  The first list included seven complaints "filed to Madison."  The second list

4

included nine complaints "filed to the warden."  Neither list presented Ray with an inquiry about the specific complaint at issue in this case.  Next to each blank, Ray wrote "Yes."

OPINION

A. <u>Legal Overview</u>

Under the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a), "[n]o action shall be brought with respect to prison conditions . . . until such administrative remedies are exhausted." 42 U.S. C. § 1997e(a).  The exhaustion requirement is mandatory and "applies to all inmate suits." <u>Woodford v. Ngo</u>, 548 U.S. 81 (2006); <u>Porter v. Nussle</u>, 534 U.S. 516, 524 (2002).

Section 1997e(a) requires "proper exhaustion," <u>Woodford</u>, 548 U.S. at 93; <u>Pozo v. McCaughtry</u>, 286 F.3d 1022, 1025 (7th Cir. 2002), which means that the prisoner must follow prison rules when filing the initial grievance and all necessary appeals, "in the place, and at the time, the prison's administrative rules require." <u>Burrell v. Powers</u>, 431 F.3d 282, 284-85 (7th Cir. 2005).  "[A] prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies." <u>Pozo</u>, 286 F.3d at 1024.

To exhaust administrative remedies in Wisconsin, inmates must follow the inmate complaint review process set forth in the Wisconsin Administrative Code ch. DOC 310. Prison officials may reject grievances that fail to comply with a procedural requirement and decline to address the merits.  Wis. Admin. Code §§ DOC 310.01, 310.05, 310.11(5)-(6). An inmate may appeal the basis for the rejection under § DOC 310.11(6).  The reviewing

authority's decision on the rejection is final.  Id.

In this case, it is undisputed that prison administrators rejected plaintiff's complaint for failing to follow prison rules, first because he filed more than two grievance in a calendar week, in violation of Wis. Admin. Code § DOC 301.09(2), and then because he re-filed the grievance more than 14 days after the incident giving rise to the grievance and did not identify a "good cause" for the late filing, in violation of Wis. Admin. Code § DOC 310.11(5)(d).  Plaintiff does not challenge the validity of either limitation, perhaps because courts have upheld limitations on the number of grievances a prisoner may file as well as time limits for filing grievances.  Both the Court of Appeals for the Seventh Circuit and the Supreme Court have upheld time limitations.  Woodford, 548 U.S. at 87 (upholding decision rejecting grievance because it was filed after 15-day deadline); Pozo, 286 F.3d at 1025 ("To exhaust administrative remedies, a person must follow the rules governing filing and prosecution of a claim . . . these include time limits.").  Although I am not aware of any controlling precedent in which a court considered the validity of § DOC 310.09(2), multiple district courts have upheld the rule.  West v. Endicott, No. 06-C-763, 2008 WL 90622, at *8 (E.D. Wis. Mar. 31, 2008) ("[§ DOC 310.09(2)] does not prohibit the filing of any complaints so much as it requires the inmate to prioritize his claims . . . [t]he rule is not, in other words, an excuse for failure to exhaust."); Ciarpaglini v. Gorske, 07-C-461-S, 2007 WL 5614117 (W.D. Wis. Oct. 4, 2007) (Shabaz, J.) (dismissing prisoner lawsuit under § 1997e(a) for exceeding limit on number of grievances).  In any event, because plaintiff is not challenging the validity of § DOC 310.09(2), I do not consider that issue.

B. <u>Health and Personal Safety</u>

Plaintiff's primary argument is that the grievance examiner should have accepted his February 23, 2007 grievance because it raised a "health and personal safety issue," which is an exception to the rule that a prisoner may not file more than two grievances in a calendar week. Wis. Admin. Code DOC § 310.09(2) ("Inmates may not file more than 2 complaints per calendar week, except that the ICE may waive this limit for good cause. The ICE shall exclude complaints that raise health and personal safety issues from this limit."). In particular, plaintiff says that his grievance raised issues of health and personal safety because he was complaining about a use of excessive force (implicating personal safety) and a failure to provide medical care (implicating health). In response, defendants argue that it was reasonable for the examiner to reject the grievance because plaintiff was not complaining about current or ongoing threats to his health or personal safety. In other words, plaintiff had received medical treatment after the use of force and he was neither asking for additional treatment in his grievance nor expressing fear of a future assault by correctional officers.

Chapter 310 does not define "health and personal safety issues" and the parties do not cite any cases in which a court has interpreted the term in the context of § DOC 310.09(2). Thus, a threshold question (that the parties do not address) is the standard of review a court must apply when faced with competing interpretations of a prison grievance rule. In a previous case, I concluded that courts must give deference to an agency's interpretation of its own regulation, but that a court could reject an interpretation that was arbitrary, clearly erroneous or otherwise deprived a prisoner of a meaningful opportunity to complete the

7

grievance process.  Simpson v. Greenwood, No. 06-C-612-C, 2007 WL 5445538, at *10 (W.D. Wis. Apr. 6, 2007).  This standard is consistent with the principle that "[p]rison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices," McCoy v. Gilbert, 270 F.3d 503, 509-10 (7th Cir. 2001) (internal quotations omitted), as well as the principle that "[p]rison officials may not take unfair advantage of the exhaustion requirement."  Dole v. Chandler, 438 F.3d 804, 809 (7th Cir. 2006).  The parties do not cite any cases decided after Simpson that suggest a different standard of review, so I see no reason for taking a different approach in this case.

Under the standard in Simpson, the examiner's interpretation of § DOC 310.09(2) does not have to be the only reasonable interpretation of the regulation or even the most reasonable interpretation.  Cf. Entergy Corp. V. River Keeper, Inc., 556 U.S. 208, 218 (2008) ("[The agency's] view governs if it is a reasonable interpretation of the statute—not necessarily the only possible interpretation, nor even the interpretation deemed most reasonable by the courts.") (citing Chevron, USA, Inc. V. NRDC, Inc., 467 U.S. 837, 843-44 (1984)).  Thus, I need not decide whether plaintiff's broader interpretation is reasonable or even better than the examiner's view.  It is enough to say that the examiner's interpretation is one reasonable view.

I conclude that the examiner's interpretation of the "health and personal safety" exception in § DOC 310.09(2) is reasonable because it makes the most sense in the context of the rule.  Section 310.09(2) represents an attempt by prison officials to limit frivolous complaints and prevent undue administrative burdens by requiring prisoners to prioritize

their grievances. West, 2008 WL 90622. A broad interpretation of the exception could allow the exception to swallow the rule and undermine its purpose. Limiting the health and safety exception to "on-going" concerns permits prison officials to further the purpose of the rule while providing a safety hatch when it is necessary to prevent imminent harm to the prisoner. Cf. 28 U.S.C. § 1915(g) (excluding prisoners "under imminent danger of serious physical injury" from a limitation preventing prisoners from filing suit after having three actions or appeals dismissed on the grounds that they were malicious, frivolous or failed to state a claim upon which relief could be granted). Assuming as I must that § DOC 310.09(2) is a permissible limitation on filing grievances under § 1997e(a), I see no reason to question the examiner's interpretation of the exception to that rule.

### C. Reliance on Statements of Prison Officials

Next, plaintiff argues that he relied on department employee Ellen Ray's statements in pursuing this suit because she told him multiple times that he had properly exhausted his grievance. Even if I assume that Ray held the opinion that plaintiff had exhausted his administrative remedies in accordance with § 1997e(a), plaintiff's argument fails. Again, it is undisputed that both of plaintiff's grievances were rejected for failing to comply with procedural requirements and the rejections were affirmed on appeal. Under Woodford and Pozo, this means that plaintiff failed to properly exhaust his claim. Ray's statements are irrelevant because plaintiff cites no evidence that she had any authority to overturn the decisions made in the context of the inmate complaint review system.

Perhaps if Ray had told plaintiff *before* he filed his grievances during the week of February 18, 2007 that he would be permitted to file more than two grievances or that he would be permitted to file a late grievance the following week, then he could rely on cases such as Dale v. Lappin, 376 F.3d 652, 656 (7th Cir. 2006), in which the court held dismissal under § 1997e(a) was not appropriate when a prisoner failed to complete the grievance process because of misinformation provided by prison officials.  However, in this case, plaintiff says that Ray made the statements at issue weeks or months after he filed his grievances, so he cannot argue plausibly that he relied on her statements in deciding when to file the grievances.  Although he may have relied on Ray's statements in deciding whether to file this lawsuit, that type of reliance is irrelevant to a determination under § 1997e(a).

Alternatively, plaintiff points to a statement made by the grievance examiner in a response to an information request that plaintiff's "[c]omplaint was accepted today." Although plaintiff does not develop this argument, presumably his position is that the examiner's use of the word "accepted" means that he complied with the prison rules.  Again, this argument is a nonstarter because it is undisputed that the examiner rejected plaintiff's grievance and the examiner's decision was affirmed on appeal.  Plaintiff cites no authority for the view that a word the examiner used on another document has any legal effect.

### D.  Other Arguments

Strewn throughout plaintiff's brief are a number of other arguments: (1) his second grievance was resubmitted within the 14-day deadline; (2) even if it was late, the department

was required to accept it for "good cause"; and (3) defendants conspired to reject his complaint because it would expose the department to liability if the complaint surfaced in litigation. Plaintiff devoted little more than a sentence or two to each of these arguments, so they are forfeited as undeveloped. Strong v. Wisconsin, 544 F. Supp. 2d 748, 754 (W.D. Wis. April 4, 2008) (quoting Pruitt v. City of Chicago, 472 F.3d 925, 930 (7th Cir. 2006)). Even if these arguments had been presented properly, however, each would fail on the merits. A brief discussion of each follows.

With respect to plaintiff's first argument, even if I assume that examiner should have concluded that plaintiff's grievance was filed on the day he submitted it (within the 14-day deadline) rather than the day the examiner received it (after the 14-day deadline), that argument does not help plaintiff. If I accept plaintiff's view, the second complaint was filed during the same calendar week as the first, meaning that it would have been rejected for violating § DOC 310.09(2).

With respect to plaintiff's argument that the examiner should have accepted his second complaint for "good cause," I understand his position to be that he should have been allowed to file a late complaint because § DOC 310.09(2) prevented him from filing an earlier complaint. However, if that were the rule, it would significantly undermine the purpose of § DOC 310.09(2) to limit the number of grievances filed. Particularly because plaintiff cites no authority for a view that would have required the examiner to accept an untimely grievance in this case, this argument is not persuasive.

Finally, plaintiff argues that prison employees engaged in a conspiracy to shield their

agency from liability. Again, plaintiff cites no authority to support his view. Even if I assume that the intent of an examiner could be relevant under § 1997e(a), plaintiff does not point to any evidence of a conspiracy.

ORDER

IT IS ORDERED that

1. The motion for reconsideration filed by plaintiff Mustafa-El K.A. Ajala, formerly known as Dennis Jones-El, dkt. #56, is DENIED.

2. The motion for summary judgment filed by defendants Craig Tom and Matthew Scullion's, dkt. #42, is GRANTED. This case is DISMISSED WITHOUT PREJUDICE for plaintiff Mustafa-El Ajala's failure to exhaust his administrative remedies.

3. Plaintiff's motion for summary judgment, dkt. #33, is DENIED as moot.

4. The clerk of court is directed to enter judgment in favor of defendants and close this case.

Entered this 7th day of March, 2014.

BY THE COURT:
/s/
BARBARA B. CRABB
District Judge